UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                    :
PFIZER INC., PHARMACIA CORP.,        :
PHARMACIA & UPJOHN INC.,             :        CIV. ACTION NO. 04-754 (JCL)
PHARMACIA& UPJOHN COMPANY,           :
G.D. SEARLE & CO, G.D. SEARLE LLC,  :
SEARLE LLC (DELAWARE) and            :        **OPINION**
SEARLE LLC (NEVADA)                  :
                                                    :
                    Plaintiffs,      :        Teva's In Limine Motion No. 1
         v.                           :
                                                    :
TEVA PHARMACEUTICALS USA, INC.      :
                                                    :
                    Defendant.       :
_____ :

**<u>LIFLAND, District Judge</u>**

        This case arises out of Teva Pharmaceuticals U.S.A., Inc.'s ("Teva" or

"Defendant") alleged infringement of U.S. Patent Nos. 5,466,823; 5,563,165; and

5,760,068 (the "patents-in-suit"), which are held by Pfizer, Inc., Pharmacia Corp.,

Pharmacia & Upjohn Inc., Pharmacia & Upjohn Company, G.D. Searle & Co.,

G.D. Searle LLC, Searle LLC (Delaware), and Searle LLC (Nevada) (collectively

"Pfizer" or "Plaintiffs").  The patents-in-suit are directed toward celecoxib, the

active ingredient in Celebrex, and a broad genus of compounds that includes

celecoxib, pharmaceutical compositions including such compounds, and methods

1

of using such compounds.

Before the Court is Teva's in limine motion No. 1, which contains three separate but related arguments.  The first argument involves Pfizer's intention to submit evidence it claims will disqualify the Fujisawa European application No. 055,829 ("Fujisawa '829 application) as a prior art reference.  The two remaining arguments involve Pfizer's intention to submit evidence aimed at disqualifying the Merck U.S. patent No. 5,474,995 ("Merck '995 patent") as a prior art reference.  This Opinion deals exclusively with Teva's first argument.  For the reasons stated herein, Teva's motion will be granted in part and denied in part.

In December 2004, Teva served Pfizer with a set of interrogatories that included the following request:

> For each claim of the '823, '165 and '068 patents that plaintiff asserts Teva infringes, describe, on a claim by claim basis, the conception and first reduction to practice of each of the alleged inventions recited in the asserted claims, including identification of the date and location of conception and the first reduction to practice of each such alleged invention.

(Decl. of Michael E. Patunas in Support of Teva's in Limine Motion No. 1 (hereinafter, "Patunas Decl."), Ex. A, Interrogatory No. 27.)  Pfizer responded to this interrogatory as follows: "Plaintiffs object to this request as premature, unduly burdensome and neither relevant nor reasonably likely to lead to the discovery of

admissible evidence."  (<u>Id.</u>, Ex. B, Response to Interrogatory No. 27.)  Pfizer agreed to "supplement its response" if Teva asserted a combination of prior art references that made an intervening date of conception relevant.  (<u>Id.</u>)  Pfizer also stated, in response to a separate interrogatory, that celecoxib was first "synthesized" as early as October 4, 1993.  (<u>Id.</u>, Ex. B, Response to Interrogatory No. 28.)

Pfizer admits that at some point "[d]uring discovery, Teva disclosed its intent to rely on [the Fujisawa '829 application.]" (Plaintiffs' Opposition to Defendant's in Limine Motion No. 1, at 4.)  The Fujisawa '829 application was published on August 11, 1993—nine days after the date on which Pfizer now alleges the inventions at issue were conceived.  However, fact discovery ended in January 2006 without any further response by Pfizer regarding the conception date.

On May 5, 2006, Teva served Pfizer with expert reports on obviousness and inequitable conduct, which explicitly disclosed Teva's theory that one could construct a hypothetical pharmacophore based on the Merck '995 patent and the Fujisawa '829 application, and use the '829 application to select 12 compounds embraced by the pharmacophore including celecoxib.  (<u>Id.</u> at 6; Declaration of Daniel L. Reisner in Support of Plaintiffs' Opposition to Defendant's in Limine

Motions Nos. 1-7 (hereinafter, "Reisner Decl."), Ex. 18 at ¶¶ 127, 149; Reisner

Decl. Ex. 46 at ¶¶ 138-144, 158-167.)  Several months later, in late August 2006,

expert discovery ended.

On September 15, 2006, the parties exchanged drafts of the pre-trial order.

In its draft, Pfizer stated that "it conceived the invention claimed in the patents-in-

suit at least as early as August 2, 1993 and worked with reasonable diligence

continuously through the time it filed for patent protection and, therefore [the

Fujisawa '829 application, which was issued subsequent to this date, was] not

prior art to the patents in suit."  (Petunas Decl., Ex. G at ¶ 9; cf. Roger Schecter

and John Thomas, Principles of Patent Law 112 (2d ed.) (explaining that a

patentee can remove a reference by demonstrating that he conceived of the

invention at issue prior to the date of reference and acted diligently from that date

until the subsequent reduction to practice).)  Teva sent a letter to Pfizer requesting

citations to materials supporting this statement.  On September 28, 2006, Pfizer

sent Teva a response including the requested citations and served Teva with

supplemental interrogatory responses.  The supplemental responses included a

response to Teva's long-ignored conception date inquiry, and claimed a

conception date of August 2, 1993.  (Reisner Decl., Ex. 2, Second Supplemental

Response to Interrogatory No. 27.)

Teva now argues that Pfizer should be precluded from submitting evidence as to this date of conception under Federal Rule of Civil Procedure 37(c)(1), which provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Teva claims that preclusion is warranted because Pfizer failed to amend its prior response to the interrogatory regarding the date of conception, as required by Rule 26(e)(2), which states that:

> A party is under a duty seasonably to amend a prior response to an interrogatory. . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

A.    Violation of Rule 26(e)(2)

Courts have employed a four-part test to determine whether a party breached its duty to amend a discovery response under Rule 26(e)(2): (1) whether there was a prior response; (2) whether the response became materially incorrect or incomplete; (3) whether the party knew that the response was incomplete; and (4) whether the corrective information was otherwise made known to the other party through the discovery process or in writing.  Tritek Technologies, Inc. v.

5

<u>United States</u>, 63 Fed. Cl. 740, 746-47 (Ct. Cl. 2005).

The first two prongs are not seriously in dispute in this case. Pfizer does, however, raise arguments with respect to the third and fourth prongs. As to the third prong, Pfizer contends that it supplemented its response when it realized its prior response was incomplete—i.e., after receiving the expert disclosure discussed above. As an initial matter, the Court is skeptical of Pfizer's assertion that "it did not appreciate the significance" of Teva's mid-discovery disclosure of its intent to rely on the Fujisawa '829 application. It appears that this disclosure triggered Pfizer's obligation under Rule 26 to supplement its response to the conception interrogatory. Ultimately, however, the Court need not evaluate Pfizer's assertion in order to make a decision as to the third prong of the test. The record reflects—and Pfizer admits—that Pfizer was informed of the precise nature of Teva's reliance on the Fujisawa '829 application (as prior art allegedly showing obviousness of the invention) on May 5, 2006. The relevance of the date of conception was clearly evident at that time, yet Pfizer did not supplement its response. Instead, Pfizer waited four months, until expert discovery had ended and the trial date was rapidly approaching, to inform Teva that it was alleging a conception date of August 2, 1993. Accordingly, the Court finds that the third prong weighs in favor of Teva.

With respect to the fourth and final prong (whether the corrective information was otherwise made known to Teva), Pfizer contends that Rule 26 is inapplicable here because the information was "otherwise [made] known to [Teva] during discovery." Fed. R. Civ. P. 26(e)(2). Specifically, Pfizer cites the fact that it turned over the inventor's laboratory notebook pages that it relies upon to support the August 2, 1993 conception date and made the relevant witnesses available for depositions. The Court is not persuaded by this argument. For information to be considered "otherwise made known," the alleged disclosure must be clear and unambiguous. "[W]here the alleged disclosure is not sufficiently clear, it cannot satisfy the requirements of [Rule] 26." Tritek, 63 Fed. Cl. at 748. Pfizer's disclosure of the notebook pages and production of the witnesses for deposition does not meet this standard.

Pfizer contends that Teva should have been able to discern Pfizer's position as to the August 2, 1993 conception date from these sources.[1] Even assuming that

---

[1] Pfizer claims that Teva in fact did discern this information as evidenced by Teva's extensive examination of Dr. Bertenshaw (the author of the notebook) during his deposition. Teva disputes this assertion. Teva argues that its questioning does not evidence any prior knowledge of the asserted conception date, and that Dr. Bertenshaw did not disclose such information in the course of his deposition.

it would have been easy to infer the August 2 date from these materials,[2] courts have found disclosures that require such inferences to be insufficiently clear for Rule 26 purposes.  See, e.g., Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725 (7th Cir. 2004); Tritek, 63 Fed. Cl. at 749.  "It would be unfair to penalize [Teva] for failing to deduce [Pfizer's alleged conception date] from these various sources, when a simple, direct (and required) response to the [conception interrogatory] by [Teva] would have avoided this issue entirely."  Tritek, 63 Fed. Cl. at 750.  Hence, by failing to supplement its response to Teva's interrogatory , Pfizer's response became materially incomplete or incorrect, and Pfizer was thus in violation of Rule 26(e)(2).[3]

B.     Imposition of Sanctions Under Rule 37(c)

A violation of Rule 26(e) does not automatically result in sanctions or the exclusion of the omitted information.  Sanctions are only triggered under Rule 37

---

[2] The Court cannot independently evaluate this proposition since neither party provided the court with copies of the relevant notebook pages.

[3] Pfizer also argues that it was not required to supplement its response because "Magistrate Falk ruled during a telephone conference that responses to contention interrogatories were not due prior to the end of fact discovery." (Plaintiffs' Opposition to Defendant's in Limine Motion No. 1, at 5.)  This argument is wholly unpersuasive in that fact discovery ended in January 2006—approximately eight months before Pfizer supplemented its response to Teva's interrogatory.

if there was no "substantial justification" for the violation and the violation causes

harm to the other party.[4]  The burden is on the party facing sanctions to prove that

the violation was justified or harmless.  Tritek, 63 Fed. Cl. at 750.

> The factors that have been considered by courts in determining
> whether sanctions are warranted for failure to supplement include: (1)
> the importance of the information withheld; (2) the prejudice or
> surprise to the party against whom the evidence is offered; (3) the
> likelihood of disruption of the trial; (4) the possibility of curing the
> prejudice; (5) the explanation for the failure to disclose; and (6) the
> presence of bad faith or willfulness in not disclosing the evidence.

Zoltek Corp. v. United States, 71 Fed. Cl. 160, 168 (Ct. Cl. 2006); see also Tritek,

63 Fed. Cl. at 750.  Here, a number of the listed factors weigh in favor of imposing

Rule 37 sanctions: the information that was withheld is quite important, Pfizer

offers no convincing explanation for its failure to disclose, and Teva has been

prejudiced by Pfizer's delay in disclosing the information until after the close of

expert discovery.  Even where prejudice exists, however, sanctions may be

unwarranted if there is a possibility of curing the prejudice.  See, e.g., Moody

Nat'l Bank of Galveston v. GE Life & Annuity Assurance Co., 270 F. Supp. 2d

---

[4] Moreover, even if sanctions are warranted, exclusion is not the only
option.  Rule 37(c) expressly states that, "[i]n addition to *or in lieu of* [exclusion],
the court, on motion and after affording an opportunity to be heard, may impose
*other appropriate sanctions*."  Fed. R. Civ. P. 37(c) (emphasis added).  Exclusion
is an extreme sanction that should be applied only when lesser remedies are
inadequate.  See Thibeault v. Square D Co., 960 F.2d 239, 247 (1st Cir. 1992);
Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

875, 879 n.1 (S.D. Tex. 2003); <u>Wechsler v. Hunt Health Sys., Ltd.</u>, 198 F. Supp.
2d 508, 527 (S.D.N.Y. 2002).  The Court finds that the prejudice to Teva caused
by Pfizer's delay can be cured by granting Teva's alternative request that it be
allowed to file supplemental expert reports regarding the conception date of the
inventions claimed in the patents-in-suit.  Accordingly, neither preclusion of
Pfizer's evidence as to the date of conception nor lesser alternative sanctions are
warranted, and Teva's in limine motion No. 1 will be denied to the extent it
requests the imposition of such sanctions.  The motion will be granted, however,
insofar as Teva seeks permission to file additional expert reports relating to the
conception date.  Teva has agreed to make those experts available for deposition.


<u>/s/    John C. Lifland, U.S.D.J.</u>


Dated: October 13, 2006