UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____    :
                                       :
PFIZER INC., PHARMACIA CORP.,          :
PHARMACIA & UPJOHN INC.,               :   CIV. ACTION NO. 04-754 (JCL)
PHARMACIA& UPJOHN COMPANY,             :
G.D. SEARLE & CO, G.D. SEARLE LLC,     :
SEARLE LLC (DELAWARE) and              :   **OPINION**
SEARLE LLC (NEVADA)                    :
                                       :
            Plaintiffs,                :   Pfizer's Motion In Limine No. 1
     v.                                :
                                       :
TEVA PHARMACEUTICALS USA, INC.         :
                                       :
            Defendant.                 :
_____    :

**LIFLAND, District Judge**

This case arises out of Teva Pharmaceuticals U.S.A., Inc.'s ("Teva" or "Defendant") alleged infringement of U.S. Patent Nos. 5,466,823; 5,563,165; and 5,760,068 (the "patents-in-suit"), which are held by Pfizer, Inc., Pharmacia Corp., Pharmacia & Upjohn Inc., Pharmacia & Upjohn Company, G.D. Searle & Co., G.D. Searle LLC, Searle LLC (Delaware), and Searle LLC (Nevada) (collectively "Pfizer" or "Plaintiffs"). The patents-in-suit are directed toward celecoxib, the active ingredient in Celebrex, and a broad genus of compounds that includes celecoxib, pharmaceutical compositions including such compounds, and methods of using such

1

compounds.

Before the Court is Pfizer's motion in limine No. 1 to preclude the trial testimony of Teva's proposed patent law expert, Ronald H. Smith. For the reasons explained herein, the Court will preclude Mr. Smith's testimony to the extent he plans to testify as to general principles of patent law or to offer legal opinions.

Mr. Smith is a registered patent attorney with nearly forty years of experience in the field of patent law. He was employed as an examiner at the Patent and Trademark Office ("PTO") for 33 years, and later joined a law firm where he worked as a patent attorney prosecuting patent applications at the PTO on behalf of inventors. Mr. Smith's credentials are not in question. According to his reports, Mr. Smith intends to offer testimony on a wide range of issues, including: PTO Practice and Procedure; the prosecution history of the applications that issued as the patents-in-suit; his opinion that Pfizer's limited disclosure during prosecution of the patents-in-suit violates the best mode requirement; his opinion that Pfizer violated its duty of disclosure and the restriction requirement; the use of objective indicia of obviousness at the PTO; PTO criteria for determining the weight and sufficiency of evidence purporting to demonstrate unexpected results in chemical cases; his opinion that Pfizer's expert's comparison of Celebrex and SC-58125 does not demonstrate unexpected results; his opinion that Pfizer's expert's comparison of Celebrex and Vioxx does not demonstrate unexpected results; and finally, his opinion that the

2

Merck U.S. patent No. 5,474,995 ("Merck '995 patent") is not cumulative to the other references considered during the examination of the patents-in-suit, and would be material to patentability. (Declaration of Daniel L. Reisner in Support of Pfizer's Memorandum of Law in Support of its Motion in Limine No. 1 (hereinafter, "Reisner Decl."), Ex. A, at 5; Reisner Decl., Ex. B, at 2; Reisner Decl., Ex. C, at 2.)

Teva contends that Mr. Smith's proposed testimony may assist the trier of fact, and is therefore admissible under Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To the extent that Pfizer argues that the Court should exclude the testimony because it is improper for an expert witness to explain the law to the fact-finder or to offer opinions about legal conclusions, the Court agrees.

In civil cases, Rule 704 expressly permits expert opinion testimony that "embraces an ultimate issue to be decided by the trier of fact." However, "Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions." United States v. Scop, 846 F.2d 135, 139 (2d Cir. 1988); see also 4 Weinstein's Federal Evidence § 704.04 ("In general, testimony about a legal conclusion, or the

legal implications of evidence is inadmissible under Rule 704."). Indeed, the Court of Appeals for the Third Circuit has explicitly held that "it is not permissible for a witness to testify as to the governing law," U.S. v. Leo, 941 F.2d 181, 196 (3d Cir. 1991), or as to legal conclusions, see, e.g., Berckeley Inv. Group Ltd. v. Colkitt, 455 F.3d 195, 218 (3d Cir. 2006).

Ten years ago, when this Court addressed the same issue, it noted that there was "some evidence that in patent cases courts relax the rule that expert witnesses cannot testify about the state of the law, or the application of the law to a specific factual situation." Mars, Inc. v. Coin Acceptors, Inc., No. 90-49, 1996 U.S. Dist. LEXIS 21514, at *3-4 (D.N.J. July 2, 1996).[1] This is equally true today. Indeed, Teva directs the Court to several patent cases wherein a court permitted expert legal testimony. See, e.g., Princeton Biochemicals, Inc. v. Beckman Coulter Inc., No. 96-5541, 2004 U.S. Dist. LEXIS 11918, at *69-70, 144-45 (D.N.J. June 17, 2004); see also generally Howard G. Pollack, The Admissibility and Utility of Expert Legal

---

[1] This Court explained that this relaxation of the rule,
may be because patent law is a discipline pregnant with so-called "mixed questions of law and fact," such as anticipation [or] obvious-ness . . . . Testimony directed at these issues may understandably cross the neat boundary that typically separates fact testimony from legal conclusions. Perhaps another reason is that patent cases are, more often than other civil actions, tried without a jury, which means that the utility of the expert testimony is untarnished by the downside risk that the factfinder will confuse the roles of witness and judge.

Mars, 1996 U.S. Dist LEXIS 21514, at *4 (internal citations omitted).

4

Testimony in Patent Litigation, 32 IDEA J. L. & Tech. 361 (1992).  Pfizer, on the other hand, directs the Court to an equal number of patent cases wherein courts have refused to allow expert legal testimony.  See, e.g., Bausch & Lomb, Inc. v. Alcon Labs, Inc., 79 F. Supp.2d 252, 258 (W.D.N.Y. 2000).

Having reviewed several of these conflicting cases, this Court remains of the opinion that "expert testimony that extends beyond factual presentation and approximates legal argument will not help the Court, but will indeed hinder it as non-evidential testimony prolongs what is already anticipated to be a lengthy bench trial."  Mars, 1996 U.S. Dist LEXIS 21514, at *7; see also W. R. Grace & Co. v. Viskase Corp., No. 90 C 5383, 1991 U.S. Dist. LEXIS 14651, at *2-3 (N.D. Ill. Oct. 15, 1991) ("Both parties are represented by numerous patent lawyers. [Therefore, the] proffered [expert] testimony offers no meaningful assistance to the court as the trier of fact.").  Accordingly, the Court will exercise its discretion and preclude Mr. Smith's testimony explicating the law generally or offering legal conclusions that follow from the facts presented at trial.  He may not testify regarding his opinion that Pfizer's limited disclosure during prosecution of the patents-in-suit violates the best mode requirement, his opinion that Pfizer violated its duty of disclosure and the restriction requirement, or his opinion that the Merck '995 patent is material to patentability and not cumulative to the other references considered during the examination of the patents-in-suit.

Mr. Smith will be permitted to testify as to PTO practice and procedure (including the PTO's use of objective indicia of obviousness and the PTO's criteria for determining the weight and sufficiency of evidence purporting to demonstrate unexpected results in chemical cases), factual information regarding the prosecution history of the applications that issued as the patents-in-suit, and his opinion that Pfizer's expert's comparison of Celebrex to SC-58125 and to Vioxx do not demonstrate unexpected results.  See Mars, 1996 U.S. Dist LEXIS 21514, at *7; Revlon Consumer Prods. Corp. v. L'Oreal S.A., No. 96-192, 1997 U.S. Dist. LEXIS 4117, at *2 (D. Del. March 26, 1997).[2]

/s/    John C. Lifland, U.S.D.J.

Dated: October 26, 2006

---

[2] Pfizer argues that portions of the allowed testimony should be precluded under Federal Rules of Evidence 402 and 403.  As an initial matter, the Court is not persuaded that the proposed testimony is irrelevant.  Moreover, the Court cannot yet determine whether and to what extent this testimony will be cumulative, or a waste of time.  The Court will entertain further objections on these grounds at trial.