NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
PFIZER, INC., PHARMACIA CORP.,            :
PHARMACIA & UPJOHN, INC.,                 :
PHARMACIA & UPJOHN COMPANY,               :
G.D. SEARLE & CO., G.D. SEARLE,           :
LLC, SEARLE, LLC (DELAWARE) and           :
SEARLE, LLC (NEVADA),                     :
                                          :
                    Plaintiffs            :          Civ. No. 04-754 (GEB)
                                          :
                    v.                    :          **MEMORANDUM OPINION**
                                          :
TEVA PHARMACEUTICALS USA, INC.,           :
                                          :
                    Defendant.            :
_____:

**Brown, Chief Judge**

        This matter comes before the Court upon the Motion for Attorneys' Fees of Plaintiffs

Pfizer, Inc., Pharmacia, Corp., Pharmacia & Upjohn, Inc., Pharmacia & Upjohn, Co., G.D. Searle

& Co., G.D. Searle, LLC, Searle, LLC (Delaware) and Searle, LLC (Nevada) (collectively,

"Pfizer" or "Plaintiffs") against Defendant Teva Pharmaceuticals USA, Inc. ("Teva" or

"Defendant").  The Court has reviewed the parties' submissions and decided the motion without

oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below,

the Court will deny Plaintiffs' motion.

**I.      BACKGROUND**

        Plaintiffs filed a Complaint on February 19, 2004 alleging the infringement of its Patents

Nos. 5,466,823 ("the '823 patent"), 5,563,165 ("the '165 patent") and 5,760,068 ("the '068

patent") (collectively, the "Pfizer Patents").  (Compl. ¶ 1.)  A bench trial was held before the

Honorable Judge Lifland from November 13 through December 8, 2006, and on December 13, 2006. (Court 3/20/07 Op. at 9.) On March 20, 2007, Judge Lifland ruled in favor of Plaintiffs on all issues. All other relevant facts of this case are set out in Judge Lifland's March 20, 2007 Findings of Fact and Conclusions of Law. (*Id.*) Judge Lifland has since retired and the pending motion is now before the undersigned for decision.

## II.    DISCUSSION

Plaintiffs contend that Defendant's conduct in the months leading up to trial, and its behavior at trial, warrant a discretionary award of attorneys' fees. The Court disagrees.

### A.    Standard

"A court may award attorney fees to a party in 'exceptional' cases pursuant to 35 U.S.C. § 285." *Sun Coast Merch. Corp. v. CCL Prods. Enters., Inc.*, 179 Fed. App'x 6, 12 (Fed. Cir. 2006). A trial court undertakes a three-step inquiry to adjudicate a request for attorney fees.

First, the Court must determine that the party requesting attorney fees is the "prevailing party" in the action. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") (emphasis added).

Second, the court examines whether there is clear and convincing evidence that the case is exceptional. *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005). "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct . . . , misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus, v. Plastic Recovery Techs, Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006), *citing Cambridge Prods. Ltd. v. Penn Nutrients, Inc.*, 962 F.2d

2

1048, 1050-51 (Fed. Cir. 1992).  "Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if … the litigation is [both] brought in subjective bad faith and … objectively baseless."  *Serio-US*, at 1322, *citing Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993).

Third, the Court may exercise discretion in awarding any attorney fees.  The Court may "weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice."  *Serio-US*, at 1322.

Teva does not appear to contest that Pfizer prevailed at trial, and that the first step of the analysis has therefore been met.  The Court will therefore turn to the question of whether this case is exceptional under 35 U.S.C. § 285.  In making that determination, the Court will first assess whether any of Defendant's actions amounted to litigation misconduct, and then analyze whether any of the arguments set forth by Teva during the litigation were objectively baseless and brought in subjective bad faith.

### B.       Whether Teva Engaged in Litigation Misconduct

Plaintiffs claim that Teva's actions amounted to litigation misconduct and thus warrant the award of attorneys' fees.  The Court holds that Plaintiffs have failed to prove this allegation by clear and convincing evidence.

    1.      Plaintiff's Arguments

        a.      Teva Elicited False Testimony And Made False Arguments With Respect To DuP-697

Plaintiffs contend that Dr. Trummlitz, Teva's expert, was put on the stand to testify about the half life of DuP-697 even though "he had no knowledge of the truth of what he was saying." Pl. Br. at 23. Plaintiffs add that further testimony at trial showed that he could not possibly have known what was known in 1993 about the half-life of DuP-697 since "[i]t was not known until well after 1993 that DuP-697 had a long half-life in humans, and the record was crystal clear in this regard." *Id.* at 24. Plaintiffs conclude that "Teva persisted in trying to mislead the Court by making factually incorrect arguments on an item of importance to its obviousness defense," a course of action it contends can only be deemed to amount to litigation misconduct. *Id.*

        b.      Teva Failed To Respond To Plaintiffs' Interrogatory Regarding Its Defenses

Plaintiffs maintain that when they "served an interrogatory on Teva seeking to ascertain its basis for asserting that the patents-in-suit are obvious, Teva responded by repeating the baseless allegations set forth in its certification." *Id.* at 25. In fact, Plaintiffs contend that:

> the failure to even disclose a combination of references ('995 and '142) that Teva would rely on for its obviousness defense until December 2005 and failure to put forth any explanation for how and why they should be combined until its expert reports six months later, shows that Teva had no good faith basis for asserting obviousness during at least the first two years of the case.

*Id.* According to Pfizer, Teva's alleged refusal to respond to the interrogatories amounted to litigation misconduct warranting an award of fees.

4

   c. Teva's Expert Witness Applied The Wrong Standard For
    Obviousness

Plaintiffs contend that Dr. Trummlitz's testimony was based on the premise that a person

of ordinary skill in the art was a person trying to invent, or innovate.  *Id.* at 26.  Plaintiffs suggest

to the Court that Dr. Trumimlitz consistently applied the wrong standard in rendering his

opinions, and that since Teva was aware of Dr. Trummlitz's position, it breached its duty of care

and candor to the Court by proffering Dr. Trummlitz.  *Id.* at 26-27.  Such a breach, according to

Pfizer, amounted to litigation misconduct.  *Id.*

   d. Teva Misled The Court By Introducing A Factually Incorrect Trial
    Demonstrative In Conjunction With A Baseless Argument

Finally, Plaintiffs submit that Teva improperly maintained a theory of inequitable conduct

never disclosed in its certification, pleadings or pretrial order, even though it knew that this

theory was based on an acknowledged typographical error on the part of Plaintiffs.  *Id.* at 27.

According to Plaintiffs, Teva then used a trial demonstrative "which contained the very same

error even though Teva knew it was an error as evidenced by its reliance on this as a theory of

inequitable conduct."  *Id.* at 28.  Plaintiffs suggest that "Teva's sole purpose in introducing this

misleading demonstrative was to fabricate an inequitable conduct argument based on this error."

*Id.*

   2. Teva's Arguments

Teva contends that Plaintiffs have failed to establish by clear and convincing evidence

that its actions amounted to litigation misconduct, and concludes that their motion for attorneys'

fees cannot stand.

    a.      Teva Adhered To The Highest Professional Standards

Teva insists that even though this was a "hard fought, complex litigation with high

stakes," its team "adhered to the highest professional standards."  Teva Opp'n at 20.  Indeed,

Teva maintains that it never gave Plaintiffs reason to seek Court intervention on discovery

matters during more than 25 months of fact and expert discovery.  *Id.*  It also claims to have

cooperated with Plaintiffs to avoid the waste of judicial resources that the launch of a generic

celecoxib product would have entailed.  *Id.* at 21.

    b.      Teva Met All Of Its Discovery Obligations

Teva also insists that to the extent Plaintiffs complain of Teva's alleged failure to fully

respond to an interrogatory, it should have sought relief under Rule 37, not a motion for

attorneys' fees.  *Id.*  Teva submits that Plaintiffs "did not seek discovery sanctions because none

were warranted."  *Id.*

Moreover, Teva dismisses Plaintiffs' claim that "because Teva did not disclose the

obviousness defense upon which it relied at trial until December 2005 Teva lacked a good faith

basis for asserting obviousness before that time."  *Id.* at 22.  In fact, Teva claims that Pfizer

requested the deferral of responses with respect to some interrogatories until the end of fact

discovery, and that it was this request, approved by Magistrate Judge Falk, that led to the delayed

assertion of the obviousness defense.  *Id.*

    c.      The Use Of DTX 2146 Did Not Amount To Litigation Misconduct

Teva argues that the evidence it introduced at trial regarding a potential error by the

Examiner was consistent with the testimony elicited by Plaintiffs, and concludes that Plaintiffs

have "no basis for asserting that Teva tried to mislead the Court."  *Id.* at 22-23.  Moreover, Teva

claims that DTX 2146 related to its double-patenting defense and not, as Plaintiffs would have it, to its inequitable conduct argument. *Id.* at 23.

Teva also dismisses Plaintiffs' allegation "that Teva relied on an 'error' as the basis for an inequitable conduct defense that Teva had not previously disclosed," arguing that it merely relied on the error to call into question Dr. Talley's credibility in assessing inequitable conduct. *Id.* at 23. Indeed, Teva "argued that Dr. Talley's credibility was suspect because Dr. Talley testified that he was responsible for checking the chemical accuracy of the application for the '823 patent . . . yet he failed to spot a major chemistry error in the application as filed . . . ." *Id.* at 23. Teva concludes that, in light of these allegations, its reliance on DTX 2146 cannot be deemed to amount to clear and convincing evidence of litigation misconduct.

d.      The Testimony Relating To DuP 697

Teva challenges Plaintiffs' assertion that "Teva knowingly had Dr. Trummlitz testify concerning half-life problems associated with DuP 697 even though he had no such knowledge . . . ." *Id.* at 24. Indeed, Teva contends that – of all the experts presented at trial – Dr. Trummlitz was the most knowledgeable about the subject matter of the patents-in-suit. *Id.* Teva also submits that Dr. Trummlitz never testified about half-life in *humans* at his deposition, and that Plaintiffs' claim that his testimony at trial and at his deposition were inconsistent are simply misplaced. *Id.* at 25. In the alternative, Teva argues that any inconsistency between Dr. Trummlitz's trial and deposition testimony is a reflection of confusion and mis-communication by Dr. Trummlitz, "a native German speaker who testified in English." *Id*. at 24. Teva submits that, under the circumstances, it cannot be deemed to have engaged in litigation misconduct by eliciting said testimony on DuP 697.

7

> e.    Teva's Reliance On Dr. Trummlitz's Obviousness Standard Did Not Amount to Litigation Misconduct

According to Teva, "Pfizer incorrectly asserts that Dr. Trummlitz applied an improper standard in conducting his obviousness analysis by applying a standard of someone who invents or is innovative." *Id.* at 27.  Indeed, Teva insists that "the court refused to hold that Dr. Trummlitz applied the wrong standard, stating that Dr. Trummlitz's testimony could be interpreted in two ways; motivation to avoid infringement or motivation to obtain a patent." *Id.*, *citing* Court 3/20/07 Op. at 113, 115.  Given the Court's pronouncements on the issue, Teva concludes that Plaintiffs cannot be found to have established by clear and convincing evidence that Teva engaged in litigation misconduct by relying on Dr. Trummlitz's characterization of the obviousness standard.

> f.    Teva's Trial Defenses Were Plausible Even Though Unsuccessful

Finally, Teva takes exception to Plaintiffs' claim that the Court had held "that Teva utterly failed to meet its burden with respect to inequitable conduct, best mode and double patenting." *Id.* at 27.  Indeed, Teva insists that the Court's Opinion acknowledges that many of the issues were close ones, noting for the example that "the legal issues regarding the prior art status of the Merck '995 patent were complicated," and that Teva's argument with respect to best mode "ha[d] some intuitive appeal." *Id.* at 27-28, *quoting* Court 3/20/07 Op. at 61, 65, 177. Under the circumstances, Teva concludes that Plaintiffs have failed to prove that Teva engaged in litigation misconduct by setting forth defenses under which it did not ultimately prevail.

3.     Analysis

Having reviewed the parties' submissions on the issue of litigation misconduct, the Court holds that Pfizer has failed to prove by clear and convincing evidence that Teva's actions amounted to litigation misconduct.  Each one of the events relied upon by Pfizer will be addressed in turn.

a.     Dr. Trummlitz's Testimony on the Half-Life of DuP-697

The Court is not convinced that Dr. Trummlitz's testimony on the half-life of DuP-697 constitutes "clear and convincing evidence" of litigation misconduct.   While Dr. Trummlitz's testimony on that issue may have been factually incorrect, or at least inconsistent with his deposition testimony, this does not rise to the level of litigation misconduct.  Rather, as argued by Teva, this could have been the result of misunderstanding (and the possibility that Dr. Trummlitz was not addressing, during the deposition, the half-life of the product in humans).  Therefore, this Court will not hold that the presentation of this testimony by Teva constituted litigation misconduct.

b.     Dr. Trummlitz's Testimony On The Obviousness Standard

Plaintiffs have also failed to persuade this Court that Dr. Trummlitz's testimony regarding the obviousness standard to be applied at trial constituted clear and convincing evidence of litigation misconduct by Teva.  Judge Lifland specifically addressed, in his March 20, 2007 Opinion, the issue of whether Dr. Trummlitz applied the appropriate standard.  While Judge Lifland ultimately held that Dr. Trummlitz had not, the Judge's Opinion makes clear that the issue was open for legitimate debate.  *See* Court 3/20/07 Op. at 113-15.  Under the

circumstances, the Court is not prepared to interpret Teva's presentation of this evidence through Dr. Trummlitz as clear and convincing evidence of litigation misconduct.

                 c.        Baseless Defenses And Failure To Respond To Plaintiffs' Interrogatories

The Court will defer analyzing Plaintiff's arguments that Teva engaged in litigation misconduct by putting forward objectively baseless defenses. Those issues are best addressed in the context of this Court's analysis of whether Teva's arguments were "objectively baseless" under *Serio-US*.

As for Teva's alleged failure to appropriately respond to plaintiff's interrogatories regarding its defenses, the Court does not find that this amounts to clear and convincing evidence of litigation misconduct. The Court considers: (i) Teva's allegation that the delay in providing the sought-after information was due to Plaintiffs' own request for deferral of responses to interrogatories, and (ii) the fact that Plaintiffs did not seek any discovery relief at the time of the events at issue.

                 d.        The Use Of DTX 2146

There is little doubt that the use of DTX 2146 was evidence of questionable judgment on Teva's part, since Teva knew or should have known that the information it contained was incorrect. However, in light of Teva's argument that it introduced the document primarily as a means of impeaching Dr. Talley, the Court is not prepared to rule that this action amounts to clear and convincing evidence of litigation misconduct.

**C.**   **Whether Teva' Contentions In This Litigation Were Objectively Baseless And Submitted In Bad Faith**

Plaintiffs' failure to prove litigation misconduct by clear and convincing evidence does not, however, necessarily doom their request for attorneys' fees.  Plaintiffs may still be entitled to attorneys' fees if they prove that Teva's defenses were objectively baseless and submitted in bad faith.

1.     Plaintiffs' Arguments

Plaintiffs contend that "Teva did not assert a non-infringement defense for any of the Celecoxib claims," "asserted a baseless obviousness and inequitable conduct defense against the '823" patent, asserted baseless invalidity and Section 112 defenses against the '165" patent, and asserted a baseless inequitable conduct defense against the '068" patent.  Pl. Br. at 4-5, 8, 10.

a.     Teva's Certification That The Infringed Claims Of The '823 And '165 Patents Are Obvious Was Baseless

Plaintiffs insist that "Teva's certification did not set forth a prima facie case of obviousness" with respect to the '823 and '165 patents.  *Id*. at 16.   Plaintiffs allege that while the certification set out a list of prior references, it failed to provide a "discussion of what those references teach or how those teachings should be combined to render the claimed invention obvious."  *Id.*  Moreover, Plaintiffs contend that: "Teva's certification makes no mention of who would qualify as a person of ordinary skill in the art, why that person would select something in those references as the starting point or be motivated to combine the references in the particular way needed to end up with celecoxib."  *Id.*  This leads Plaintiffs to conclude that, under the circumstances, Teva's obviousness defenses with respect to '823 and '165 must be deemed to have been objectively baseless.  *Id.*

Plaintiffs add that "Teva's conduct during the litigation confirms that it did not have a good-faith basis for asserting obviousness against the patents-in-suit when it filed its certification." *Id.* at 20.   Plaintiffs submit that they specifically requested in their July 30, 2004 interrogatories to Teva a description of "the teaching of each reference which Teva contends should be combined with others to render the claim obvious, and [an explanation of] how the prior art is combined in order to render the claim obvious." *Id.*  Plaintiffs insist, however, that in spite of its legal obligation to disclose that information, "Teva made no attempt to identify the teachings of these prior art references or explain how the teachings would be combined to render the claims-in-suit obvious in response to Pfizer's request." *Id.*  Plaintiffs conclude that "Teva should now be precluded from arguing that the obviousness defense in its certification set forth a prima facie case of obviousness" because it "never meaningfully respond[ed] to Pfizer's interrogatory", and submit that Teva's actions with respect to the interrogatory confirm that Teva had no good faith basis for its assertion of obviousness when it filed its paragraph IV certification. *Id.* at 20-21.

Finally, Plaintiffs note that Teva "did not list the '995 patent as a prior art reference for obviousness in its . . . certification, instead listing only a combination of references which Teva ultimately abandoned." *Id.* at 21.  Plaintiffs argue that "abandoning arguments set forth in the certification in favor of brand new ones at trial is evidence supporting an award of attorneys' fees. *Id.*

          b.      Teva's Certification With Respect To Inequitable Conduct Was Baseless

Plaintiffs submit to the Court that Teva made much of Searle's alleged failure to disclose the '808 patent to the Patent Office in a related application, yet dropped any such defense at trial. *Id.* at 21. Indeed, Plaintiffs contend that Teva made no mention of the '808 patent or the articles cited in the International Search Report ("ISR"), and that "abandoning arguments at trial is evidence of a baseless certification." *Id.*, *citing Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 235-36; *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 21 F. Supp. 2d 366, 376 (S.D.N.Y. 1998).

Similarly, Plaintiffs maintain that Teva initially claimed that Searle had failed to disclose material information in connection with the '068 patent, but then abandoned that argument at trial. Pl. Br. at 22. In essence, Plaintiffs claim that Teva was simply searching for a viable theory, issued a completely flawed certification, and then retracted those arguments – clear evidence, according to Plaintiffs, of a baseless certification. *Id.*

          c.      Teva Abandoned The Remainder Of Its Arguments

Finally, Pfizer contends that Teva dropped the only additional arguments raised in its certification – i.e. "that (1) claims 1 and 2 of the '165 are invalid as anticipated by the '808, and (2) claims 1-5 and 15-18 of the '165 are invalid under the written description and enablement requirements of § 112." *Id.* Plaintiffs conclude that "there can be no clearer evidence that Teva filed a baseless certification than the fact that *every single* argument raised in its certification was not raised at trial . . . ." *Id.* (emphasis in original).

2.      Teva's Arguments

a.      The Presentation Of Defenses That Were Not In The Notice Letter
Does Not Justify Attorney Fees

Teva maintains that its "presentation of defenses at trial that were not in its notice letter

does not justify attorney fees." Def. Br. at 7.  Indeed, Teva submits that its notice letter was sent

before discovery, and that Teva only learned of alternative claims during the course of discovery.

*Id.*  For example, Teva insists that "discovery unearthed a best mode violation that Teva pursued

at trial," and that its "extensive deposition and document discovery determined that [the Merck

'995 Patent] was indeed prior art."  *Id.*

b.      Plaintiffs' Alleged Failure To Challenge Certain Teva Non-
Infringement Defenses

Teva claims that it asserted non-infringement with respect to certain claims of all three

patents addressed in the notice letter.  *Id.* at 8.  Teva adds that on April 18, 2005, in its

supplemental interrogatory response, Pfizer "indicated . . . that it would not assert the claims

which Teva's Notice Letter had identified as not infringed."  *Id.*  Teva concludes that "[b]y

Pfizer's admission, Teva's Notice Letter non-infringement defense on these claims was not

objectively baseless."  *Id.*

c.      Teva's Other Notice Letter Defenses Regarding The '823 Patent
Were Not Objectively Baseless

First, Teva claims that in "determining whether Teva's Notice Letter defenses are

objectively baseless, the Court must assess whether a reasonable litigant could reasonably believe

that there is a chance of success on the merits."  *Id.*, *citing Prof'l Real Estate*, 508 U.S. at 60, 62.

14

Applying this standard, Teva suggests that the defenses it set forth in its certification letter in connection with the '823 patent cannot be deemed objectively baseless.

Indeed, Teva maintains that it was not objectively baseless for Teva to assert that celecoxib would be obvious from the teachings of the five references listed in its notice letter. Teva Opp'n at 9.  Teva explains that the "only differences between the '808 compound and celecoxib are the substituents on the two phenyl rings of the 6-5-6 scaffold . . . ."  *Id.* at 10. Teva concludes that "[t]he El-Khawass article and '518 patent . . . would have provided motivation for a person of ordinary skill to modify the '808 compound . . . with a reasonable expectation of making an anti-inflammatory compound."  *Id.* at 11.

Similarly, Teva maintains that the inequitable conduct defense set out in the notice letter with respect to the '823 patent was not objectively baseless.  *Id.* at 14.  Teva argues that its letter alleged that Plaintiffs failed to disclose six references cited in an International Search Report ("ISR") that claimed priority from the application that issued as the '823 patent.  *Id.*  Further buttressing its argument, according to Teva, are the facts that:

> (1) The ISR in the '720 PCT application was mailed about eight months before issuance of the '823 patent;
>
> (2) Mr. Bulock, the prosecuting attorney for both the '823 and '165 patents, knew about the non-disclosed ISR references as evidenced by his submission of an IDS in the '165 patent prosecution identifying such references to the Patent Office about three months before the '823 patent issued;
>
> (3) In the '165 patent IDS, Mr. Bulock identified the non-disclosed ISR references as material to the subject matter of the '165 patent, which claimed compositions utilizing the compounds claimed in the '823 patent application;

15

> (4) The Manual of Patent Examining Procedure ("MPEP") states that prosecuting attorneys 'have a duty to bring to the attention of the [Patent] Office any material prior art or other information cited or brought to their attention in any related foreign application,' such as the non-disclosed ISR references that had been brought to Mr. Bulock's attention; and
>
> (5) The filewrapper of the '823 patent does not indicate that Mr. Bulock or the '823 patent inventors disclosed the non-disclosed ISR references to the Patent Office.

*Id.* Teva concedes that it eventually learned that Pfizer had asserted the ISR references during the prosecution, but that the Patent Office had lost them. It insists, however, that at the time of the notice letter and on the basis of then-publicly available information, Teva's inequitable conduct defense was not baseless. *Id.* at 15.

> d.    Teva's '165 Defenses Were Not Objectively Baseless

First, Teva insists that its obviousness defense with respect to the '165 patent was not objectively baseless. Teva claims that in light of the '808 patent, the El-Khawass article, the '305 patent, the '142 patent and/or the '518 patent, "an objective observer could have a reasonable belief that there was a chance that claim 17 and the other asserted claims of the '165 patent . . . would be found obvious at trial." *Id.* at 16.

Second, Teva claims that its non-enablement and written descriptions defenses in the '165 notice letter were not objectively baseless either. *Id.* at 17. Indeed, Teva contends that "the '165 patent did not provide any guidance regarding how to achieve a composition containing a therapeutically effective amount and did not identify a disease to be treated, a rate of administration [or] a numerical dosage range . . . ." *Id.* These deficiencies, according to Teva, were only remedied as a result of a pre-trial stipulation between the parties construing the term

16

"therapeutically effective." *Id.*   Teva concludes that it properly desisted from pursuing all of the enablement and written description defenses once the stipulated claim construction narrowed the scope of the claims.  *Id.*

Finally, Teva contests Plaintiffs' allegation that it dropped *all* of its contingent non-enablement defenses.  Teva notes that it argued in the alternative, in its post-trial brief, that "claims 1-4 and 15-16 of the '165 patent are invalid under 35 U.S.C. § 112 for lack of enablement . . . ." *Id.* at 18.

> e.   Teva's Inequitable Conduct Defense Regarding the '068 Patent Was Not Objectively Baseless

Teva also takes exception to Plaintiffs' claim that Teva's defenses regarding the '068 patent were objectively baseless.  Teva submits that "Mr. Bulock prosecuted both the '068 patent and the application that issued as U.S. Patent No. 5,972,986 ("the '986 patent") during an eight month period.  *Id.*  According to Teva, the applications for the '068 and '986 patents had overlapping subject matters but different inventors. *Id.* at 18-19.  Yet, Mr. Bulock allegedly failed to disclose the '986 application to the examiner for the '068 patent. *Id.* at 19.  Moreover, Teva contends that Mr. Bulock could have been deemed to seek to intentionally deceive the Patent Office because he:

> (a) . . . copied text from the specification of the application for the '068 patent into the specification of the application for the '986 patent;
>
> (b) . . . prosecuted claims in the applications for the '986 and '068 patents that had the same scope and did not disclose the application for the '986 patent to the '068 patent examiner, despite having considered claim overlap during prosecution of the '068 patent; and

> (c) . . . knew that a publication by Reddy et al. was material for
> purposes of assessing inventorshop of the '068 patent.

*Id.* at 19.

Teva dismisses Plaintiffs' claims that it failed to take discovery on this issue, noting that it "obtained discovery from Mr. Bulock regarding the relationship between the '068 patent and the '986 patent and his reasons for non-disclosure of the '986 patent during prosecution of the co-pending application for the '068 patent," and that it obtained discovery from "inventors of the '986 patent regarding the meaning of terms used in the claims, and thus claim scope . . . ." *Id.* at 19-20.

      3.    Analysis

As the Court noted above, "[a]bsent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Serio-US Indus.*, 459 F.3d at 1322. Since we hold that the first requirement (subjective bad faith) has not been met, we need not assess whether any of Teva's defenses were objectively baseless. *See Brooks*, 393 F.3d at 1381.

There appears to be little dispute that Teva's certification, while listing a number of references allegedly anticipating the '823 and '165 patents, failed to adequately present a *prima facie* case of obviousness. Indeed, as Plaintiffs point out, it failed to provide a "discussion of what those references teach or how those teachings should be combined to render the claimed intention obvious." Pl. Br. at 16. While Teva did offer a detailed explanation of its rationale in its Opposition Brief, it appears clear that such a post-hoc shoring-up of its defenses is insufficient to validate them – i.e. to establish that they were anything but "objectively baseless." However,

considering this rationale, the Court cannot find by clear and convincing evidence that Teva's certification was submitted in bad faith.

Similarly, the Court is not persuaded that Teva's alleged failure to respond to Plaintiffs' July 30, 2004 interrogatories regarding the obviousness defenses constitutes clear and convincing evidence of bad faith. As noted above, Teva claims that any delays in responding to the interrogatories to the extent required by Plaintiffs was attributable to Plaintiffs themselves. The Court is also not persuaded that the fact that Teva ultimately dropped the references set out in its certification establishes by clear and convincing evidence that its claims of obviousness with respect to '823 and '165 were set forth in subjective bad faith. There is no dispute that such a tactic should be taken in consideration by the Court in assessing bad faith, and thus, whether a case is exceptional. *See ICU Med., Inc. v. Alaris Med. Sys.*, No. 04-689, 2007 U.S. Dist. LEXIS 34467, at *6 (C.D. Ca. Apr. 17, 2007) (later dropping of a claim or defense, even when an honest mistake is alleged, may suffice to make a case exceptional under Section 285). However, reviewing that fact in the context of the entire litigation, as required under *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, the Court concludes that Plaintiffs have failed to prove subjective bad faith by clear and convincing evidence. *See Yamanouchi*, 231 F.3d 1339, 1346-47 (Fed. Cir. 2000) (in assessing whether a case qualifies as exceptional, "the district court must look at the totality of the circumstances."). Indeed, Teva made credible assertions that it cooperated with Plaintiffs in good faith throughout the discovery process, and noted that it only dropped its claims as the evidence elicited through discovery eliminated its initial defenses and raised new ones.

Similarly, the Court holds that the dropping of the inequitable conduct defense in connection with the '068 patent and the anticipation defense in connection with the '165 patent do not render this case an exceptional one under 35 U.S.C. § 285.  The Court also finds credible Teva's claims that non-enablement and written descriptions defenses to the '165 patent were dropped as a result of a joint stipulation by the parties of the term "therapeutically effective" is sufficient to prevent the Court from finding subjective bad faith.

**D.      Expert Fees**

Teva takes exception to Plaintiffs' request for expert fees as well as attorneys fees. Even if Plaintiffs' request remained viable in light of this Court's holdings above, the Court notes that it does not read 35 U.S.C. § 285 to provide for the reimbursement of expert fees as well as attorney fees.

**III.     CONCLUSION**

For the foregoing reasons, the Court holds that Plaintiffs have failed to establish by clear and convincing evidence that Teva's actions in the case at bar amounted to litigation misconduct or that it acted in subjective bad faith in setting forth its defenses in the paragraph IV certification.  Accordingly, the Court holds that Plaintiffs are not entitled to attorneys' fees under 35 U.S.C. § 285, and are not entitled to reimbursement of their expert fees.

The Court notes that even if it had found subjective bad faith to have been established by clear and convincing evidence, it would deny the motion for attorneys' fees in its discretion as a review of the totality of the circumstances in this case compels the conclusion that Teva's behavior throughout the case simply did not rise to the level at which a grant of attorneys' fees to plaintiffs would be appropriate.  *See ICU Med.*, at *6 ("[a]lthough  the trial judge may exercise his discretion to award attorney fees and costs because of inequitable conduct during prosecution of the patent or misconduct during litigation, attorney fees are not to be routinely assessed against a losing party in litigation[,] in order to avoid penalizing a party for merely defending or prosecuting a lawsuit."), *citing McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003).  An appropriate form of Order accompanies this Opinion.


Dated:  December 4, 2007


                                        s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.


21